# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| **ROBERT SANDERS,** | |
| **Plaintiff,** | |
| **v.** | **1:03-cv-1631-WSD** |
| **TERRY LANGLEY, individually and in his official capacity as Sheriff of Carroll County, et al.,** | |
| **Defendants.** | |

### <u>ORDER</u>

This is a Section 1983 action in which Plaintiff Robert Sanders ("Plaintiff") alleges that the deputies and medical staff of the Carroll County Jail and the Haralson County Jail, where he was incarcerated, failed to adequately supervise other inmates and acted with deliberate indifference to his medical needs.  It is before the Court on Defendant Correctional Medical Services, Inc.'s ("CMS") Motion for Summary Judgment or, in the Alternative, Motion to Dismiss [77], Defendants Terry Langley and Robert Barr's Motion for Summary Judgment [88] and Plaintiff's Motion for Partial Summary Judgment [91].

## I.    BACKGROUND

### A.    Plaintiff's Summary Judgment Submissions

As an initial matter, the Court must address Plaintiff's failure to comply with the Local Rules in this case generally and with regard to the summary judgment motions in particular.  In its February 4, 2005 Order granting motions to dismiss filed by various defendants in this case, the Court observed that Plaintiff's response to certain of the motions was untimely, and that his responses failed to comply with the font and point requirements of the Local Rules.  (See February 4, 2005 Order [76] at 4 n.3.)  In an effort to provide Plaintiff with an opportunity to contest the dispositive motions, the Court ignored these deficiencies and considered Plaintiff's response.  (Id.)  The Court expressly admonished Plaintiff that in the future it would not accept submissions which do not comply with the Court's Local Rules.  (Id.)

Plaintiff failed to heed this warning.  His submissions in connection with the parties' motions for summary judgment again fail to comply with the font, point, page-limit and spacing requirements set out in the Court's Local Rules.  In addition, the manner in which the briefs were filed and labeled under the Court's

electronic filing system has further complicated the resolution of this case.  For example, Plaintiff's response in opposition to Defendants Langley and Barr's Motion for Summary Judgment is not separately filed and labeled as a response; instead, it is attached to a submission filing labeled "Plaintiff's Exhibits in Response to Defendant Sheriff Terry Langley and Chairman Robert Barr and [sic] Plaintiff's Request to deny and [sic] Grant Plaintiff's Motion for Partial Summary Judgment," and is styled as a "Statement of Theory of Recovery and Material Facts as to Which There is No Genuine Issue to be Tried." [97].

Defendants request that the Court strike these submissions for failure to comply with the Local Rules, citing the Court's previous admonishment to Plaintiff's counsel that future submissions which did not comply with the Local Rules would not be accepted.  Striking these submissions likely is warranted. However, in deference to Plaintiff and in an effort to provide him with every opportunity to prosecute his case, the Court denies Defendants' request and will consider Plaintiff's summary judgment materials, notwithstanding his counsel's failure to comply with the Local Rules and this Court's express order.

### B.      Factual Background

The following facts are deemed to be undisputed for the purpose of the parties' motions for summary judgment.  Unless otherwise indicated, these facts are drawn from the statements of material facts as to which there is no genuine issue to be tried filed by Defendants in support of their motions for summary judgment ("Defendants' Statements of Material Fact") [77, 88], as well as Plaintiff's Statement of Material Facts As To Which There Are No Genuine Issues To Be Tried ("Plaintiff's Statement of Material Facts") [35].  See L.R. 56.1(B)(2), N.D. Ga.  Where the party responding to a summary judgment motion does not directly refute a material fact set forth in the movant's Statement of Material Facts with specific citations to evidence, or otherwise fails to state a valid objection to the material fact pursuant to Local Rule 56.1B(2), such fact has been deemed admitted by the respondent.  See id. at 56.1B(2).[1]  In all instances, the Court views the

---

[1]  Plaintiff did not file a response to Defendants' Statements of Material Facts containing individually numbered, concise, non-argumentative responses corresponding to each of Defendants' numbered material facts, as required by Local Rule 56.1B.  See L.R. 56.1B(2)(a)(1).  Instead, he simply re-filed his own Statement of Material Facts offered in support of his motion for summary judgment.  (See Pl.'s Resp. to Individual Defs.' Mot. for Summ. J. at 6-20; Pl.'s Resp. to CMS's Mot. for Summ. J. [93] at 4-18.)

evidence and factual inferences in the light most favorable to the party responding to a motion for summary judgment, as required under Rule 56. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); McCabe v. Sharrett, 12 F.3d 1558, 1560 (11th Cir. 1994); Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir. 1993).

Plaintiff was arrested for simple battery on June 2, 2001, and was incarcerated at the Carroll County Jail. Upon arriving at the jail, Plaintiff was given a copy of the Inmate Handbook and was required to fill out a medical form regarding his medical history and conditions. Plaintiff was assigned to cell 16, an observation cell where detainees are often placed temporarily after booking, with fifteen other inmates. On June 3, 2001, after failing to make bond, Plaintiff was moved into a dorm area with fifteen other inmates.

On June 11, 2001, Plaintiff received some groceries from another inmate who was released on bond. Verbal confrontations occurred between Plaintiff and the other inmates with whom he was housed concerning his alleged refusal to share the grocery items. Plaintiff does not allege that jail deputies witnessed these confrontations and he concedes that he did not notify jail deputies of them. Later that day, Plaintiff was attacked by several of the inmates in his dorm area. The

attack took place outside of the view of surveillance video, and it was not witnessed by any deputies on duty. Although doctors subsequently discovered that the attack had resulted in a fracture of Plaintiff's left leg, his only visible injuries after the attack were a few scratches on his legs.

Soon after the attack, a deputy making his routine check of the cell blocks encountered Plaintiff asking for medical treatment and immediately escorted Plaintiff back to cell 16 to await medical treatment. Plaintiff was examined by a jail nurse employed by CMS[2] within one hour of the attack. Plaintiff told the nurse that he hurt his knee jumping off his bunk. The nurse concluded that Plaintiff was suffering from a contusion and a sprain to his leg. She directed that Plaintiff received pain medication and she scheduled an x-ray for June 13, 2001, which was the next scheduled visit from a person who was able to take x-rays with a portable x-ray machine.[3]

---

[2] CMS is a medical services provider contracted to perform medical services at the Carroll County Jail. Dr. Jack Birge and Nurses Lisa Morris and Melissa Abbott were employed by CMS and performed medical services at the Carroll County Jail during the relevant time.

[3] CMS contracted with Healthcare Corrections X-Ray Services ("HCX") to perform x-ray services at the Carroll County Jail. HCX was not named as a defendant in this case.

On June 13, 2001, an x-ray technologist from HCX took an x-ray of Plaintiff's leg and sent the films off-site to be read by Dr. Merrill Berman, a radiologist who contracted with HCX to perform x-ray review services.  Dr. Berman reviewed the x-rays but was unable to formulate a definite diagnosis because the x-rays were dark and more angles were needed.  He ordered additional x-rays.  Between the first and second x-rays, Plaintiff filled out sick call requests, in accordance with the Carroll County Jail's procedures, complaining of pain in his leg and asking for more pain medication.  The jail nurse gave him Motrin for pain on several occasions.

On June 21, 2001, the x-ray technician came to the jail to take the second x-rays of Plaintiff's leg.  Both the HCX nurse and the jail nurse noticed the dark bruise on Plaintiff's leg while taking the x-ray and gave him Motrin and ice, instructing him to keep his leg elevated.  The second x-rays of Plaintiff's leg were forwarded to Dr. Berman for review.

On June 22, 2001 Plaintiff was transferred from the Carroll County Jail to the Haralson County Jail.  That same evening, Plaintiff was taken to Higgins Hospital for examination due to his continued complaints of pain in his leg.  He was examined by Dr. Miriam Burnett.  Dr. Burnett's initial diagnosis was the same as the

Carroll County Jail nurse's initial diagnosis -- a contusion and sprain.  Plaintiff was sent back to the Haralson County Jail in the early morning hours of June 23, 2001.

On or about June 24, 2001, based on the second set of x-rays taken on June 21, 2001, Dr. Berman concluded that Plaintiff had suffered a fracture of his tibial plateau.  On June 24, 2001, a member of Dr. Berman's medical staff contacted the Carroll County Jail to notify prison officials of the diagnosis.  When Dr. Berman's office learned that Plaintiff had been transferred to the Haralson County Jail, they contacted a Haralson County Jail official and informed him that Plaintiff needed immediate surgery on his leg.

Plaintiff was released from the Haralson County Jail on June 25, 2001, prior to surgery subsequently scheduled for July 12, 2001.  Plaintiff had surgery on his leg at Wellstar Cobb Hospital and was referred to Grady Memorial Hospital for follow-up treatment.  To date, Plaintiff has had fourteen (14) surgical procedures on his leg.  The delay in diagnosing and treating his fracture has exacerbated his condition and made proper setting of the fracture either impossible or substantially more difficult.

### C.    Procedural History

Plaintiff filed this case on June 10, 2003, asserting federal claims under 42 U.S.C. §§ 1983 and 1985, as well as a state-law claim for medical malpractice.[4]  In his initial Complaint, he named the following individuals and entities as defendants: Carroll County, Terry Langley (individually and in his official capacity as Sheriff of Carroll County), Robert Barr (individually and in his official capacity as Chairman of the Carroll County Board of Commissioners), Ronnie Kimball (individually and in his official capacity as then Sheriff of Haralson County), Charles R. Sanders, Sr. (in his official capacity as Sole Commissioner for Haralson County), and CMS. Plaintiff subsequently amended his Complaint to add Drs. Birge and Berman, and Nurses Abbott, Morris and Thomas (the "Nurse Defendants") as defendants.

In April 2004, Plaintiff voluntarily dismissed his claims against Defendants Charles R. Sanders, Sr. and Ronnie Kimball [31, 32].  In February 2005, the Court dismissed Plaintiff's claims against Drs. Birge and Berman, and his claims against

_____

[4]  Plaintiff also seeks recovery of his attorneys' fees pursuant to 42 U.S.C. § 1988.  (Second Am. Compl. "Prayer for Relief".)

the Nurse Defendants [76].  Only his claims against CMS and Terry Langley and Robert Barr (the "Individual Defendants") remain.[5]

These parties proceeded through discovery and, on March 1, 2005, and March 7, 2005, respectively, CMS and the Individual Defendants moved for summary judgment on all of Plaintiff's claims.  Plaintiff filed a partial motion for summary judgment on March 7, 2005, seeking summary judgment on the issue of liability with respect to CMS and the Individual Defendants.  These motions are fully briefed and are now before the Court for determination.[6]

---

[5]  Although Plaintiff named Carroll County as a defendant in his original and amended complaints, it does not appear from the record that a summons was issued for this defendant, that it was ever served with process, or that it has participated in this action at all.  Accordingly, Plaintiff's claims against Carroll County are dismissed without prejudice pursuant to Local Rule 41.3.  See L.R. 41.3, N.D. Ga.  The Court notes that Plaintiff is not prejudiced by this dismissal, since his claims against Defendant Barr in his official capacity are the functional equivalent of a claim against the county.  See Busby v . City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991).

[6]  Plaintiff filed sur-reply briefs in opposition to the Individual Defendants' and CMS's motions for summary judgment [103, 107].  Neither the Federal Rules of Civil Procedure nor this Court's Local Rules contemplate the filing of a sur-reply brief in opposition to a motion for summary judgment.  Byrom v. Delta Family Care-Disability & Survivorship Plan, 343 F. Supp. 2d 1163, 1188 (N.D. Ga. 2004); Garrison v. Ne. Ga. Med. Ctr., Inc., 66 F. Supp. 2d 1336, 1340 (N.D. Ga. 1999) (holding that "[t]o allow such surreplies as a regular practice would put the court in the position of refereeing an endless volley of briefs").  Indeed, Local Rule 56.1 expressly states that "the parties shall not be permitted to file supplemental

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." Id.

---

briefs, with the exception of a reply by the movant, except upon order of the court." L.R. 56.1A, N.D. Ga. Plaintiff did not request leave to file a sur-reply, nor does his sur-reply demonstrate adequate grounds for such leave to be granted. Accordingly, the Court will not consider his sur-reply briefs in deciding the pending motions for summary judgment.

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor.  United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In this case, multiple parties have moved for summary judgment.  The Court views the evidence in the light most favorable to Plaintiff in deciding CMS and the Individual Defendants' motions for summary judgment, and in the light most favorable to CMS and the Individual Defendants in evaluating Plaintiff's Motion for Partial Summary Judgment.

**B.      The Individual Defendants' Motion for Summary Judgment**

The Individual Defendants argue summary judgment is warranted on Plaintiff's Section 1983 claims against them because (1) Plaintiff cannot demonstrate that the treatment he received while a pre-trial detainee at the Carroll County Jail violated his constitutional rights; (2) his claims for damages against the Individual Defendants in their official capacities are barred by Eleventh Amendment immunity; (3) he cannot establish facts sufficient to impose supervisor liability on the Individual Defendants with respect to any alleged conduct on the part of the deputies or medical staff at the jail; and (4) the Individual Defendants are entitled to qualified immunity with respect to Plaintiff's claims for damages against them in their individual capacities.  (Individual Defs.' Br. in Supp. of Mot. for Summ. J. at 6-21.)  The Court shall consider these arguments in turn.[7]

---

[7]   The Individual Defendants moved for summary judgment on Plaintiff's Section 1985(3) claim on the grounds that (1) Plaintiff fails to demonstrate facts supporting the existing of a conspiracy among Defendants; and (2) Plaintiff is not a member of a class that is afforded special protection under Section 1985(3) or that Congress intended to protect when it passed the statute.  (Individual Defs.' Br. in Supp. of Mot. for Summ. J. at 22-23.)  Plaintiff in his response did not refute these arguments or otherwise address his claim under Section 1985.  See Bute v. Schuller Int'l, Inc., 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) ("Because plaintiff has failed to respond to this argument or otherwise address this claim, the Court deems it abandoned."); Welch v. Delta Air Lines, Inc., 978 F. Supp. 1133, 1137 (N.D. Ga. 1997) ("Plaintiff's failure to respond to Defendant's argument alone entitles

1.      Plaintiff's Section 1983 Claims

Section 1983 does not itself confer any substantive rights.  See 42 U.S.C. §

1983; Graham v. Connor, 490 U.S. 386, 393-94 (1989).  Instead, it provides a

private cause of action for persons whose rights under the United States

Constitution have been violated under color of state law -- "a method of vindicating

federal rights elsewhere conferred."  See Graham, 490 U.S. at 393-94.  To establish

a Section 1983 violation, a plaintiff must show:  (1) conduct committed by a person

acting under color of state law; (2) that deprived them of rights, privileges or

immunities secured by the Constitution or laws of the United States.  See Duke v.

Massey, 87 F.3d 1226, 1231 (11th Cir. 1996).  Here, Plaintiff alleges that prison

officials acted with deliberate indifference to his serious medical needs and that he

was subject to inhumane prison conditions and violence at the hands of his fellow

inmates, in violation of the Eighth and Fourteenth Amendments.[8]

_____

Defendant to summary judgment on these claims.").  Because Plaintiff is deemed to
have abandoned this claim, and because the Individual Defendants' arguments have
merit, summary judgment on this claim is GRANTED.

     [8]  As a pre-trial detainee, Plaintiff's rights exist under the Due Process Clause
of the Fourteenth Amendment rather than the Eighth Amendment.  See City of
Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983).  However, his claims
regarding prison conditions and for deliberate indifference to serious medical needs
are subject to the same Eighth Amendment scrutiny as if they had been brought as

-14-

a.     *Deliberate Indifference to Serious Medical Needs*

"It is well established that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."  Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (quotations and internal punctuation omitted); Crosby v. Monroe County, 394 F.3d 1328, 1335 (11th Cir. 2004) (holding that pre-trial detainees may prove a Fourteenth Amendment substantive due process claim based upon denial of medical care by showing the government was deliberately indifferent to the detainee's serious medical needs).  "However, not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999) (quotations omitted); see also Estelle v. Gamble, 429 U.S. 97, 105-06 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Indeed, the Eleventh Circuit has held that "[m]edical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to

_____

claims under the Eighth Amendment.  See Jordan v. Doe,
38 F.3d 1559, 1564-65 (11th Cir. 1994); McDowell v. Brown, 392 F.3d 1283, 1290
n.8 (11th Cir. 2004).

shock the conscience or to be intolerable to fundamental fairness.'" <u>Harris v.</u>
<u>Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir. 1991) (internal citations omitted).

"To show that a prison official acted with deliberate indifference to serious
medical needs, a plaintiff must satisfy both an objective and a subjective inquiry.
First, a plaintiff must set forth evidence of an objectively serious medical need.
Second, a plaintiff must prove that the prison official acted with an attitude of
'deliberate indifference' to that serious medical need." <u>Farrow v. West</u>, 320 F.3d
1235, 1243 (11th Cir. 2003).  "In our circuit, a serious medical need is considered
'one that has been diagnosed by a physician as mandating treatment or one that is
so obvious that even a lay person would recognize the necessity for a doctor's
attention.'" <u>Farrow</u>, 320 F.3d at 1243 (quoting <u>Hill v. DeKalb Reg'l Youth Det.</u>
<u>Ctr.</u>, 40 F.3d 1176, 1187 (11th Cir. 1994)).  "In either case, the medical need must
be one that, if left unattended, poses a substantial risk of serious harm." <u>Brown</u>,
387 F.3d at 1351 (quotations omitted).  The Individual Defendants do not dispute
that the injury suffered by Plaintiff constituted a serious medical need; they argue
Plaintiff's claim fails because he cannot demonstrate that they acted with deliberate
indifference to his serious medical need.  (<u>See</u> Individual Defs.' Br. in Supp. of
Mot. for Summ. J. at 18-20.)

"Deliberate indifference has three components:  (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."  McElligott, 182 F.3d at 1255.  "Whether each of the defendants had the requisite knowledge of the seriousness of [the plaintiff's] medical needs is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence."  Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1426 (11th Cir. 1997).  "The requisite deliberate indifference may be established by a showing that prison doctors or prison guards intentionally denied or delayed access to medical care requested by a prisoner.  Barfield v. Brierton, 883 F.2d 923, 938 (11th Cir. 1989); see also Farrow, 320 F.3d at 1246 ("[E]ven where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable.") (internal citations omitted); Mladek v. Day, 293 F. Supp. 2d 1297, 1305-1306 (M.D. Ga. 2003) ("Deliberate indifference to serious medical needs may be shown by failure to provide prompt attention to those needs by delaying necessary medical treatment for nonmedical reasons or by proving a policy of deficiencies in staffing or

procedures such that the pretrial detainee is effectively denied medical care.")
(citations and quotations omitted).  "However, inadvertent or negligent conduct in
diagnosing or treating a medical condition will not state a constitutional violation
merely because the victim is a prisoner."  Barfield, 883 F.2d at 938; see also Harris,
941 F.2d at 1505 ("Mere incidents of negligence or malpractice do not rise to the
level of constitutional violations.").

　　　　Here, the undisputed evidence shows that once jail deputies were notified of
Plaintiff's injury, he received immediate medical attention.  The treatment provided
by CMS employees was appropriate in view of their conclusion that he had
suffered only a contusion and a sprain -- a conclusion based on their examination
of Plaintiff and the (incorrect) information provided to them by Plaintiff concerning
the cause of his injury.  It also is undisputed that the delay in properly diagnosing
Plaintiff's injury was the result of the jail nurse's incorrect medical assessment of
his injury and the inability of the reviewing radiologist to discern from the initial x-
rays whether a fracture had occurred.  Once the reviewing radiologist was able to
make a proper diagnosis of the fracture, this diagnosis and the radiologist's
recommendation for treatment were provided immediately to prison officials.
Although it is now clear that the CMS employees' initial diagnosis was incorrect,

and that Plaintiff's injuries were more serious than they appeared to be, their failure to properly diagnose the fracture is, at worst, negligence and therefore is not sufficient to establish deliberate indifference to a serious medical need.  See Kramer v. Gwinnett County, Ga., 306 F. Supp. 2d 1219, 1227-28 (N.D. Ga. 2004) (granting summary judgment on the plaintiff's deliberate indifference claim where his complaints concerned modes of treatment, not lack of treatment, and "sound[ed] more in the nature of medical malpractice rather than conscious disregard or deliberate indifference to a known medical need").  Accordingly, summary judgment is warranted on Plaintiff's Section 1983 claim for deliberate indifference to serious medical needs.

b.     *Unconstitutional Conditions of Confinement*

Plaintiff also alleges he was subject to unconstitutional conditions of confinement at the Carroll County Jail.  "[W]hile the Constitution does not require prisons to be comfortable, it also does not permit them to be inhumane, 'and it is now settled that the . . . conditions under which [a prisoner] is confined are subject to scrutiny under the Eighth Amendment.'"  Purcell v. Toombs County, Ga., 400 F.3d 1313, 1319 (11th Cir. 2005) (citing Jordan, 38 F.3d at 1564).  In Purcell, the

Eleventh Circuit summarized the required showing for a claim of unconstitutional

conditions of confinement:

> To show a violation of [his] Eighth Amendment rights,
> [an inmate] must "produce sufficient evidence of (1) a
> substantial risk of serious harm; (2) the defendants'
> deliberate indifference to that risk; and (3) causation."  To
> be deliberately indifferent a prison official must know of
> and disregard "an excessive risk to inmate health or
> safety; the official must both be aware of facts from
> which the inference could be drawn that a substantial risk
> of serious harm exists, and he must also draw the
> inference."  We will not allow the advantage of hindsight
> to determine whether conditions of confinement
> amounted to "cruel and unusual" punishment.

Purcell, 400 F.3d at 1319-20 (internal citations omitted). Accord Jordan, 38 F.3d at

1565 ("[T]o determine the constitutionality of the conditions at [a jail], one must

look to 'contemporary standards of decency,' to ascertain whether those

conditions deprived [the inmate] of "the minimal civilized measure of life's

necessities.") (citing Estelle, 429 U.S. at 103, and Rhodes v. Chapman, 452 U.S.

337, 347 (1981)).

Plaintiff here contends that the Carroll County Jail was overcrowded and that

this alleged overcrowding led to inmate-on-inmate violence such as the attack he

suffered.  With respect to inmate violence, it clear that "prison officials have a duty

. . . to protect prisoners from violence at the hands of other prisoners."  Purcell,

400 F.3d at 1319 (citations omitted).  However, "not . . . every injury suffered by

one prisoner at the hands of another . . . translates into a constitutional liability . . .

."  Id. (citations and punctuation omitted); see also id. at 1320-21 ("[O]ccasional,

isolated attacks by one prisoner on another may not constitute cruel and unusual

punishment, [but] confinement in a prison where violence and terror reign is

actionable.") (citing Woodhous v. Virginia, 487 F.2d 889, 890 (4th Cir. 1973)).

The argument and evidence offered by Plaintiff in support of his claims

regarding overcrowding and inmate-on-inmate violence is scant.  He states:

> The County also was responsible for providing adequate
> jail space by providing the funding.  It is obvious that the
> jail was over-crowded and with that over-crowding
> produce [sic] cruel and horrible conditions of detention.
> Placing inmates in an over-crowded jail and than [sic]
> placing them in an over-crowded shower with-out [sic]
> proper supervision and separation of violent inmates
> created the environment in which [Plaintiff] was injured.
> Thus, there [sic] violated the 8th Amendment deliberate
> indifference standard.

(Pl.'s Resp. to Individual Defs.' Mot. for Summ. J. at 26; Pl.'s Resp. to CMS's

Mot. for Summ. J. at 22-23.)[9]  With respect to overcrowding, Plaintiff cites, and

_____

[9] It is unclear whether Plaintiff's argument concerning the separation of
"violent" inmates refers to inmates who have attacked other inmates, or to inmates
accused of crimes involving violence.  In either case, this argument is unpersuasive.
Plaintiff does not cite the Court to evidence that his alleged attackers previously

-21-

the Individual Defendants do not dispute, that at the relevant time the jail housed

more than twice as many inmates as it was designed to house when it was built.

However, he does not submit evidence to support his claim that the area in which

he was housed was not adequately supervised by jail deputies, nor does he refute

the Individual Defendants' arguments concerning the mitigating measures taken by

jail officials to ensure that converted areas of the jail, such as the area where

Plaintiff was originally housed, were clean and secure.  (Individual Defs.' Br. in

Supp. of Mot. for Summ. J. at 15-16.)  In addition, he does not adequately

articulate how the conditions of confinement at the jail created a substantial risk of

serious harm, nor does he cite to evidence that the Individual Defendants were

made aware of this risk.  Instead, he simply relies on the fact of overcrowding and

that he was attacked to establish that a serious risk of inmate-on-inmate violence

existed and that jail and county officials, including the Individual Defendants, were

aware of this risk.  This hind-sighted conclusion is not sufficient under the law of

this Circuit to survive a properly supported motion for summary judgment on his

Section 1983 claim.  See Purcell, 400 F.3d at 1320-24 (holding that the plaintiff's

---

were found to have attacked other inmates or that they were accused of crimes
involving violence.  Indeed, Plaintiff himself had been arrested for allegedly
committing such an offense -- battery of his wife.

evidence regarding previous inmate violence and the inability of prison officials to observe certain areas of the jail did not rise to the level of a "substantial" or "sufficiently serious" risk actionable under Section 1983:  "In the jail setting, a risk of harm to some degree always exists by the nature of its being a jail."). Accordingly, summary judgment on this claim is warranted.

> 2.   Eleventh Amendment Immunity With Respect to Defendant Langley

The Individual Defendants also argue that, even if Plaintiff can demonstrate a violation of his constitutional rights, his claims against Defendant Langley in his official capacity are barred by the Eleventh Amendment.  (Individual Defs.' Br. in Supp. of Mot. for Summ. J. at 7-8.)

"To receive Eleventh Amendment immunity, a defendant need not be labeled a 'state officer' or 'state official,' but instead need only be acting as an 'arm of the state,' which includes agents and instrumentalities of the state."  Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc).  In Manders, the Eleventh Circuit held that, with respect to use-of-force policy at a jail and in training and disciplining deputies concerning the policy, a sheriff is an "arm of the State" and not his or her particular county.  Manders, 338 F.3d at 1328.  Following the Manders decision, the Eleventh Circuit in Purcell held that Georgia sheriffs function as arms of the

-23-

State -- not their particular county -- when promulgating policies and procedures governing conditions of confinement at a county jail, and that a sheriff therefore is entitled to Eleventh Amendment immunity when sued in his or her official capacity for alleged constitutional violations relating to conditions of confinement.  400 F.3d at 1324-1325 ("Sheriff Kight functions as an arm of the State -- not of Toombs County -- when promulgating policies and procedures governing conditions of confinement at the Toombs County Jail.  Accordingly, even if Purcell had established a constitutional violation, Sheriff Kight would be entitled to Eleventh Amendment immunity from suit in his official capacity.") (citing Manders, 338 F.3d at 1315).

The Individual Defendants argue dismissal of Plaintiff's claims against Defendant Langley in his official capacity is warranted because, as in Manders and Purcell, his claims are based on Defendant Langley's and his deputies' exercise of their law enforcement authority derived from the State of Georgia, not Carroll County.  (Individual Defs.' Br. in Supp. of Mot. for Summ. J. at 7-8.)  With respect to Plaintiff's allegations concerning overcrowding at the Carroll County Jail and his physical assault at the hands of other inmates, the Court agrees.  This claim relates to conditions of confinement at the Carroll County Jail.  In performing his

duties related to conditions of confinement at the jail, Defendant Langley acted as an arm of the State, not of Carroll County.  Accordingly, Plaintiff's claim against Defendant Langley in his official capacity regarding conditions of confinement at the jail are barred by the Eleventh Amendment.

With respect to Plaintiff's claim for deliberate indifference to serious medical needs, however, the Court is not persuaded that Defendant Langley is entitled to Eleventh Amendment immunity.        The Eleventh Circuit repeatedly has held that whether a Georgia sheriff's authority is derived from the State or the county "must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." Manders, 338 F.3d at 1308-1309.  Accordingly, the Court cannot simply assume that because a county sheriff acts as an arm of the State with respect to conditions of confinement at the jail, he necessarily acts as an arm of the State with respect to the provision of medical care at the jail as well.  Indeed, the Manders court took great pains to limit its holding to the particular functions at issue in that case, and to distinguish those functions from the provision of medical care:  "We stress that this case does not involve medical care, which counties have a statutory obligation to provide to

inmates in county jails."  338 F.3d at 1323 n.43 (citing O.C.G.A. § 42-5-2).[10]  The

Court must make an independent determination whether Defendant Langley acted

as an arm of the State or Carroll County with respect to the provision of medical

care at the Carroll County Jail.

In determining whether an entity is an arm of the State, the Eleventh Circuit

examines four factors:  (1) how state law defines the entity; (2) what degree of

control the State maintains over the entity; (3) where the entity derives its funds; and

(4) who is responsible for judgments against the entity.  Manders, 338 F.3d at 1309.

The particular function at issue in this case is the provision of adequate medical

care to pre-trial detainees in the Carroll County Jail and the creation of policies and

training relating to this responsibility.  Neither party has presented sufficient

information relating to the above four factors for the Court to determine in what

capacity Defendant Langley was operating.  Moreover, at least one court has

addressed this precise issue under Manders and determined that a Georgia sheriff

acts as an arm of the county in providing medical care to pre-trial detainees and

_____

[10]  Georgia Code Section 42-5-2 provides that "it shall be the responsibility
of the governmental unit, subdivision, or agency having the physical custody of an
inmate to maintain the inmate, furnishing him food, clothing, and any needed
medical and hospital attention . . . ."  O.C.G.A. § 42-5-2(a).

training jail deputies with respect to medical care.  See Green v. Glynn County, Ga.,

No. Civ.A. CV201-52, 2006 WL 156873, *3 (S.D. Ga. Jan. 16, 2006) (Alaimo, J.)

("In light of the county's statutory obligation with regard to providing medical care

to inmates in the custody of the county, the Court concludes that . . . Sheriff

Bennett was acting on behalf of Glynn County with regard to providing medical

care to pretrial detainees and training to jail personnel in regard to such care.").  In

view of the incomplete record before the Court regarding the four factors identified

in Manders, and the existing case law adverse to the Individual Defendants'

position, the Court cannot conclude that Eleventh Amendment immunity bars

Plaintiff's Section 1983 claim against Defendant Langley for deliberate indifference

to serious medical needs.

        3.    Supervisor Liability for the Individual Defendants in Their
                Official Capacities

The Individual Defendants also move for summary judgment on the Section

1983 claims against them in their official capacities on the ground that, even if the

alleged conduct on the part of jail deputies and CMS employees violated Plaintiff's

constitutional rights, Plaintiff fails to demonstrate facts sufficient to hold the

Individual Defendants liable for such conduct.  "Supervisory officials are not liable

under section 1983 on the basis of respondeat superior or vicarious liability."

Belcher v. City of Foley, Ala., 30 F.3d 1390, 1396-97 (11th Cir. 1994).

"Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation."  Braddy v. Fla. Dep't of Labor & Empl. Sec., 133 F.3d 797, 802 (11th Cir. 1998) (quoting Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).  "A causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when the supervisor's improper custom or policy resulted in deliberate indifference to constitutional rights."  Dalrymple v. Reno, 334 F.3d 991, 996-97 (11th Cir. 2003) (citations and quotations omitted).  "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."  Brown, 906 F.2d at 671.

It is undisputed that Plaintiff never spoke to Defendant Langley or Defendant Barr and is unaware of any involvement these defendants had in Plaintiff's treatment or medical care while in the Carroll County Jail.  Plaintiff claims these defendants are liable for alleged deficiencies in medical care because they were responsible for

developing policies for providing medical care to pre-trial detainees and for training and supervising jail deputies and medical staff to recognize medical problems in pre-trial detainees and to refer them for appropriate care.  (<u>See</u> Pl.'s Resp. to Individual Defs.' Mot. for Summ. J. at 24-34.)

"A failure to adequately train municipal employees constitutes an actionable policy or custom for § 1983 purposes 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact.'"  <u>Cook v. Sheriff of Monroe County, Fla.</u>, 402 F.3d 1092, 1116 (11th Cir. 2005) (citation omitted).  Where a plaintiff relies on allegations of inadequate training and supervision to impose liability on a municipality, he must show "that the municipality's failure to train evidenced a 'deliberate indifference' to the rights of its inhabitants."  <u>Gold v. City of Miami</u>, 151 F.3d 1346, 1350 (11th Cir. 1998) (internal citation omitted); <u>see also</u> <u>Gold</u>, 151 F.3d at 1351 ("[W]ithout notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train or supervise."); <u>Bunyon v. Burke County, Ga.</u>, 306 F. Supp. 2d 1240, 1258 (S.D. Ga. 2004) ("In order to prevail, [the plaintiff] must be able to show that the need for more or different training is 'so obvious' that it is 'likely to result in the violation of constitutional rights

-29-

. . . .") (citing <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 390 (1989)).  "The need of a particular type of training may be obvious either where a pattern of constitutional violations exists such that the defendant knows or should know that corrective measures are needed, or "where jailers face clear constitutional duties in recurrent situations."  <u>Bunyon</u>, 306 F. Supp. 2d at 1258.

Having reviewed Plaintiff's response to the Individual Defendants' motion for summary judgment, the Court concludes he has failed to produce sufficient evidence to establish liability on the part of the Individual Defendants in their official capacities.  Specifically, the Court finds Plaintiff did not cite the Court to evidence supporting his argument that the Individual Defendants' alleged failure to review CMS's performance of its contract to provide medical services at the Carroll County Jail and their alleged failure to train jail deputies with respect to medical care were the cause of his injuries, or that the Individual Defendants' conduct with respect to these issues constituted a purposeful disregard of his constitutional rights.  Plaintiff does not cite the Court to evidence that the Individual Defendants knew or should have known of CMS's alleged deficient performance of its contract with the county (for example, by way of repeated complaints concerning shoddy medical care provided to the jail's inmates), or that the deputies at the Carroll

County Jail lacked adequate training and supervision with respect to referring inmates to CMS for medical attention.[11]  Instead, Plaintiff seeks to hold the Individual Defendants liable because employees of CMS, the company providing medical services on the county's behalf, did not correctly diagnose his fracture. This is not sufficient to establish liability on the part of the Individual Defendants in their official capacities.  See McDowell, 392 F.3d at 1293-94 (affirming summary judgment for the defendant county on the plaintiff's claim for deliberate indifference to serious medical needs:  "The fact that the [county board of commissioner's] budget practices resulted in understaffing [at the jail] does not amount to a purposeful disregard which would violate any citizen's constitutional rights.  . . . [The plaintiff's] argument in this case is essentially a medical malpractice claim which is insufficient to establish liability under 42 U.S.C. § 1983.") (citations omitted); Marsh v. Butler County, Ala., 268 F.3d 1014, 1037 (11th Cir. 2001) (dismissing a claim for deliberate indifference to serious medical needs where the plaintiff failed to allege sufficient facts showing that the county sheriff knew or

---

[11]  Indeed, it is undisputed the jail deputy on patrol of Plaintiff's cell block escorted him to the jail nurse immediately upon receiving Plaintiff's initial report of his injury.  Plaintiff's claim appears to be that the jail deputy should have received medical training such that he could have diagnosed Plaintiff's fracture on plain sight, notwithstanding the fact that CMS and other medical personnel could not.

should have known of the need for additional training or supervision with respect to
the medical-care policies at issue); <u>Cook</u>, 402 F.3d at 1116 (holding that the
plaintiff's Section 1983 claim against a county sheriff as properly dismissed where
the allegations in the complaint failed to establish that the sheriff himself had
subjective knowledge of the alleged risk of serious harm resulting from failure to
train or supervise jail deputies); <u>Bunyon</u>, 306 F. Supp. 2d at 1258-59 (granting
summary judgment on a claim for deliberate indifference to serious medical needs
where the prisoner failed to produce evidence that a practice of inadequate staffing
or training for jail deputies with regard to medical care was the legal cause of his
injury).

       4.     <u>Qualified Immunity With Respect to Plaintiff's Claims Against
the Individual Defendants in Their Individual Capacities</u>

The Individual Defendants also move for summary judgment on Plaintiff's
Section 1983 claims for damages against them in their individual capacities on the
basis of qualified immunity.  "Qualified immunity offers complete protection for
government officials sued in their individual capacities if their conduct does not
violate clearly established statutory or constitutional rights of which a reasonable
person would have known."  <u>Wood v. Kesler</u>, 323 F.3d 872, 877 (11th Cir. 2003)

(citations and quotations omitted).  The process for analyzing a defense of qualified

immunity is well settled:

> To be eligible for qualified immunity, the official must
> first establish that he was performing a "discretionary
> function" at the time the alleged violation of federal law
> occurred.  Once the official has established that he was
> engaged in a discretionary function, the plaintiff bears the
> burden of demonstrating that the official is not entitled to
> qualified immunity.  In order to demonstrate that the
> official is not entitled to qualified immunity, the plaintiff
> must show two things:  (1) that the defendant has
> committed a constitutional violation and (2) that the
> constitutional right the defendant violated was "clearly
> established" at the time he did it.

Crosby, 394 F.3d at 1332.  The Eleventh Circuit has instructed that "[q]uestions of

qualified immunity should be resolved at the earliest possible stage in the litigation."

Dalrymple, 334 F.3d at 995 (citations and quotations omitted).

"To determine whether an official was engaged in a discretionary function,

[the court must] consider whether the acts the official undertook 'are of a type that

fell within the employee's job responsibilities.'"  Crosby, 394 F.3d at 1332 (quoting

Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004)).  In this case, the

allegations demonstrate that the various conduct of the Individual Defendants -- the

detention of Plaintiff, the supervision and training of law enforcement personnel,

oversight of the conditions of confinement at the jail, and the provision of medical

-33-

services to inmates -- was within their job responsibilities.  Accordingly, the

Individual Defendants have established that they were engaged in discretionary

functions.

The Court already has determined that Plaintiff fails to demonstrate that either

the medical treatment he received or his conditions of confinement while an inmate

at the Carroll County Jail violated his constitutional rights.  Moreover, even

assuming he could establish such a violation, Plaintiff fails to respond to the

Individual Defendants' arguments regarding qualified immunity or otherwise cite the

Court to case law from this Circuit or the Supreme Court which would provide

reasonable officials in the Individual Defendants' positions that their conduct with

respect to the Carroll County Jail was unlawful.  See Hope v. Pelzer, 536 U.S. 730,

739 (2002) ("For a constitutional right to be clearly established its contours must be

sufficiently clear that a reasonable official would understand that what he is doing

violates that right.  This is not to say that an official action is protected by qualified

immunity unless the very action in question has previously been held unlawful, but it

is to say that in the light of pre-existing law the unlawfulness must be apparent.";

Holloman, 370 F.3d at 1278 ("[T]he salient question is whether the state of the law

at the time of the events in question gave respondents fair warning that their alleged

treatment of the plaintiff was unconstitutional.") (quotations and other internal

punctuation omitted).  Accordingly, the Court finds Plaintiff fails to carry his

burden regarding the final two prongs of the qualified immunity analysis, and

summary judgment on the basis of qualified immunity is appropriate.

    **C.**    **CMS's Motion for Summary Judgment or, in the Alternative, Motion to Dismiss**

Plaintiff also asserts a Section 1983 claim for deliberate indifference to

serious medical needs against CMS.  Like the Individual Defendants, CMS moves

for summary judgment on this claim on the ground that its employees' diagnosis

and treatment of Plaintiff's injuries did not evidence a deliberate indifference to

serious medical needs.  (CMS's Br. in Supp. of Mot. for Summ. J. at 13-17.)

Private entities such as CMS may be subject to liability under Section 1983

when they perform traditional state functions.  See Buckner v. Toro, 116 F.3d 450,

452 (11th Cir. 1997) ("When a private entity . . . contracts with a county to provide

medical services to inmates, it performs a function traditionally within the exclusive

prerogative of the state.  In so doing, it becomes the functional equivalent of the

municipality.") (citations omitted).  However, as set out in Section II(B)(1), supra,

the conduct at issue in this case did not amount to deliberate indifference to serious

medical needs under the Eighth and Fourteenth Amendments.  Accordingly,

summary judgment is warranted on Plaintiff's Section 1983 claim against CMS.

### D.      Plaintiff's Motion for Partial Summary Judgment

Plaintiff's motion must be denied for the same reasons which warrant the

entry of summary judgment in favor of CMS and the Individual Defendants on

Plaintiff's claims against them; namely, that Defendants' alleged conduct in this

case did not amount to deliberate indifference to a serious medical need and that

the conditions of Plaintiff's confinement did not offend the Eighth and Fourteenth

Amendment's proscriptions against cruel and unusual punishment.  See

Section II(B)(1), supra.  Accordingly, summary judgment in favor of Plaintiff is

inappropriate.

### E.      Plaintiff's State-Law Claims

In addition to his federal claims, Plaintiff appears to assert state-law claims

against CMS and/or the Individual Defendants for medical malpractice and for

recovery of medical expenses pursuant to O.C.G.A. § 42-5-2.  (See Second Am.

Compl., "Claim V"; Individual Defs.' Br. in Supp. of Mot. for Summ. J. at 23-25.)

These state-law claims are before the Court on supplemental jurisdiction.

"A district court has discretion to decline to exercise supplemental jurisdiction over the state-law claims when . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."  28 U.S.C. § 1367(c).  "The decision on [whether to retain jurisdiction over the state-law claims] should be and is vested in the sound discretion of the trial court."  Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1288 (11th Cir. 2002).  See generally United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

Considering the nature of Plaintiff's state-law claims, and the stage of the proceedings at which Plaintiff's federal-law claims have been dismissed, the Court finds the above-listed factors counsel against retaining supplemental jurisdiction over the state-law claims.  Accordingly, these claims shall be dismissed without prejudice.

**III.   CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Individual Defendants' Motion for Summary Judgment [88] and CMS's Motion for Summary Judgment or, in the Alternative, Motion to Dismiss [77] are **GRANTED IN PART** and **DENIED IN PART**.  With respect to Plaintiff's federal-law claims, Defendants' motions are **GRANTED** and the Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants against Plaintiff on these claims.  Defendants' motions are **DENIED** with respect to Plaintiff's state-law claims and these claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment [91] is **DENIED**.

**SO ORDERED**, this 28th day of March, 2006.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE